**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SELLAS LIFE SCIENCES GROUP, INC.,<br>and,<br>DR. ANGELOS M. STERGIOU,<br><br>    Plaintiffs,<br><br>v.<br><br>JOHN DOE,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No.  1:21-cv-06014-AJN

**RESPONSE TO ORDER
TO SHOW CAUSE**

**TABLE OF CONTENTS**

**Page**

Preliminary Statement ..........................................................................................................1

Legal Standards ...................................................................................................................2

The First Factor Weighs Against Fair Use Because the Copyrighted Work and Defendant's Secondary Works Have the Same Purpose and Character of Use ......................................3

    a)    Defendant's Secondary Works Are Not Transformative ................................................3

        i)    Defendant's Actions Suggest Both Secondary Works Are Not Transformative .........3

        ii)    Defendant's Secondary Works Lack the Required Nexus to the Impersonator Posts and Corresponding Commentary and/or Criticism, Negating Transformative Use ....4

        iii)    Defendant's Secondary Works Embody the Same Manner and Purpose as the Original Copyright .....................................................................................................5

    b)    Images Are Not Commercial In Nature, Which Slightly Favors Fair Use ......................7

    c)    Plaintiff's Copyright Infringement Reports to Yahoo! And Defendant's Sudden Shift to the Altered Secondary Work Plausibly Suggests Defendant Acted in Bad Faith ............7

The Second Factor Weighs Against, or is Neutral to Fair Use, for the Works are Creative in Nature, But Published .........................................................................................................9

The Third Factor Weighs Against Fair Use, for the Secondary Works are "Essentially the Heart" of the Copyright ....................................................................................................................10

The Fourth Factor Weighs Against Fair Use Because of Potential Market Harm .........................12

Conclusion ..........................................................................................................................14

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Authors Guild v. Google, Inc.*,
   804 F.3d 202 (2d Cir. 2015)......................................................................4, 11, 12, 13

*Barcroft Media, Ltd. v. Coed Media Grp., LLC*,
   297 F. Supp. 3d 339 (S.D.N.Y. 2017)............................................................. *passim*

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
   448 F.3d 605 (2d Cir. 2006)....................................................................................14

*Blanch v. Koons*,
   467 F.3d 244 (2d Cir. 2006).....................................................................................3

*Boesen v. United Sports Publs., Ltd.*,
   2020 U.S. Dist. LEXIS 203682t (E.D.N.Y. Nov. 2, 2020), *reconsideration
   denied*, 2020 U.S. Dist. LEXIS 240935 (E.D.N.Y. Dec. 22, 2020)............................4

*Cambridge University Press v. Patton*,
   769 F.3d 1232 (2014)...............................................................................................2

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (2004)...............................................................................................2, 3

*Davis v. Gap, Inc.*,
   246 F.3d 152 (2d Cir. 2001)....................................................................................10

*Dhillon v. Does 1–10*,
   No. 13 Civ. 1465(SI), 2014 WL 722592 (N.D. Cal. Feb. 25, 2014) ......................11

*Harbus v. Manhattan Inst. for Policy Research, Inc.*,
   2020 U.S. Dist. LEXIS 74568 (S.D.N.Y. Apr. 27, 2020)............................9, 10, 12

*Harper & Row Publisher*s,
   471 U.S. ................................................................................................................7

*Harper & Row Publishers, Inc. v. Nation Enters.*,
   471 U.S. 539 (1985)..................................................................................................7

*Marano v. Metro. Museum of Art*,
   472 F. Supp. 3d 76 (S.D.N.Y. 2020)......................................................................14

*Michael Grecco Prods. v. Valuewalk LLC*,
   345 F. Supp. 3d 482 (S.D.N.Y. 2018).....................................................................12

*Monster Commc'ns, Inc. v. Turner Broad. Sys., Inc.*,
    935 F. Supp. 490 (S.D.N.Y. 1996) ....................................................................9

*Nicklen v. Sinclair Broad. Grp., Inc.*,
    No. 20-cv-10300 (JSR), 2021 U.S. Dist. LEXIS 142768 (S.D.N.Y. July 30,
    2021) ...........................................................................................................2, 3, 12

*Ringgold v. Black Entertainment Television, Inc.*,
    126 3d 70, 79 (2d Cir. 1997).........................................................................3

*Sinclair v. Am. Media, Inc.*,
    No. 18-CV-0823 (LAK)(SN), 2018 U.S. Dist. LEXIS 154116 (S.D.N.Y. Sep.
    7, 2018) .......................................................................................................11

*Swatch Grp. Mgmt. Servs. v. Bloomberg L.P.*,
    756 F.3d 73 (2d Cir. 2014)...........................................................................2

*Wood v. Oberserver Holdings, LLC*,
    2021 U.S. Dist. LEXIS 127484 (S.D.N.Y. July 8, 2021) .............................5

*Yang v. Mic Network, Inc.*,
    405 F. Supp. 3d 537 (S.D.N.Y. 2019)....................................................5, 7, 10

**Federal Statutes**

17 U.S.C. § 107(2) .............................................................................................9

17 U.S.C. § 107(4) .............................................................................................12

Copyright Act......................................................................................................2

§ 107 of the Copyright Act ................................................................................2

**Other Authorities**

Angelos Stergiou,
    https://www.google.com/search?q=angelos+stergiou&rlz=1C1GGRV_enUS8
    13US813&sxsrf=ALeKk0334CvnF-
    EvezS1WRVrUzpppOG2vg:1628125337813&source=lnms&tbm=isch&sa=X
    &ved=2ahUKEwjbqqPD15jyAhXhGVkFHcQzA6sQ_AUoAXoECAEQAw&
    biw=1275&bih=608 (last visited Aug. 6, 2021) ...........................................6

New York Post Article ........................................................................................5

Plaintiffs Sellas Life Sciences Group, Inc. ("Plaintiff Sellas" or "Sellas") and Dr. Angelos M. Stergiou ("Plaintiff Stergiou" or "Stergiou") (collectively, "Plaintiffs") hereby submit this Response to the Court's Order to Show Cause, filed on July 21, 2021 (Dkt. No. 5), as to why Plaintiffs' copyright infringement claims should not be dismissed under the fair use exception.

Plaintiffs' Response is supported by the pleadings and papers on file in this Action, any oral argument(s) allowed by this Court, and any other matter on which this Court takes notice.

## PRELIMINARY STATEMENT

This case involves Defendant John Doe's willful infringement of a copyrighted professional headshot of Plaintiff Stergiou.  Plaintiff Stergiou is the CEO, founder, and President of Sellas, a successful, publicly traded late-stage clinical biopharmaceutical company.  Plaintiff Sellas owns all right, title and interest in the copyrighted image of Stergiou (the "Copyright").

Defendant's willful copying and display of Plaintiff Stergiou's professional headshot from Plaintiff's LinkedIn page or from Sellas' website cannot be fair use because it serves no purpose other than its originally intended one, which is to identify Stergiou.  In other words, even if Doe's posts about Stergiou can be considered "parody" of Stergiou or of Sellas, Doe's use of the copyrighted headshot bears no relationship to the posts themselves other than being a photograph of Stergiou.  Defendant's choice of photograph was also arbitrary as there were at least 15 publicly available images of Stergiou from which to choose on Google—none of which bore any relationship to Defendant's posts other than an illustrative one.  And even assuming that Defendant's sole purpose was to "parody" Stergiou, it was not necessary for Defendant to use either the Copyright or any other copyrighted image of Stergiou in order to achieve a parody purpose.

Defendant could have used a stock image, no image, an avatar, or—as he later did—altered the Copyright sufficiently in the first place.  Defendant could have even sought permission from

one of many different copyright holders of images that are publicly available from a simple Google search. But, Defendant chose none of those options—instead cutting and pasting Stergiou's copyrighted image from Stergiou's LinkedIn page or Sellas' website (hereinafter, "Unaltered Secondary Work"). It was not until Defendant presumptively was made aware by Yahoo! of his unlawful copying that he altered the Copyright in an attempt to parody the image of Stergiou to avoid infringement (hereinafter, "Altered Secondary Work"). And, while Plaintiffs do not concede that Defendant's altered photograph is fair use, Plaintiffs submit that if any use by the Defendant of the Copyright is to be considered fair, it is the altered image in which Defendant's parody purpose bears more than just an illustrative relationship with the copyrighted work itself.

**LEGAL STANDARDS**

"The determination of fair use is a mixed question of fact and law." *Swatch Grp. Mgmt. Servs. v. Bloomberg L.P.*, 756 F.3d 73, 83 (2d Cir. 2014). Section 107 of the Copyright Act provides four factors for courts to consider in the fair use analysis: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used; and (4) the effect of the use upon the market for or value of the work in light of the purposes of the Copyright Act." *Nicklen v. Sinclair Broad. Grp., Inc.*, No. 20-cv-10300 (JSR), 2021 U.S. Dist. LEXIS 142768, at *3-*24 (S.D.N.Y. July 30, 2021) (citing *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (2004)). Fair use is a fact-intensive inquiry that applies to each unauthorized work at issue. *Cambridge University Press v. Patton*, 769 F.3d 1232, 1259 (2014). The results are considered jointly, in light of the purposes of copyright." *Campbell*, 510 U.S. at 578.

Based on the analysis below, and the facts alleged in the Pleadings, the totality of factors weigh against fair use. Therefore, Plaintiffs respectfully submit that they have shown cause why Defendant's infringement does not qualify as fair use.

2

**THE FIRST FACTOR WEIGHS AGAINST FAIR USE BECAUSE THE COPYRIGHTED WORK AND DEFENDANT'S SECONDARY WORKS HAVE THE SAME PURPOSE AND CHARACTER OF USE**

The first factor examines the purpose and character of the unauthorized, secondary work. *Blanch v. Koons*, 467 F.3d 244, 251 (2d Cir. 2006). This inquiry examines to what extent the secondary work is: (1) transformative; (2) commercial; and (3) whether the infringer acted in bad faith. *See Nicklen*, 2021 U.S. Dist. LEXIS 142768, at \*16.

### a) <u>Defendant's Secondary Works Are Not Transformative</u>

The fair use doctrine permits secondary transformative works that further the purpose and goals of copyright, or "further the public discourse and the free exchange of ideas in order to promote science and the arts." *Campbell*, 510 U.S. 579. This inquiry examines whether "the new work merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Ringgold v. Black Entertainment Television, Inc.*, 126 3d 70, 79 (2d Cir. 1997) (citations omitted).

### i) *Defendant's Actions Suggest Both Secondary Works Are Not Transformative*

As a threshold matter, Defendant's own actions confirm the Secondary Works are not transformative. First, Defendant's selection and use of the Unaltered Secondary Work was careful, to gain legitimacy for the Impersonator Account through utilizing the same image as Plaintiff Stergiou's real accounts. If not for this, why not use a stock image, no image, an avatar, or a different image found in the public domain? A cursory Google search for "Angelos Stergiou" shows many alternative images that Defendant could have chosen for the Impersonator Account's profile picture, but chose not to.

All reasonable inferences drawn in Plaintiffs favor suggest that sometime between June 11th and 15th, Yahoo! Customer Care notified Defendant of Plaintiff Sellas' allegations of at least

copyright infringement.  Then, around June 16th, Defendant updated the profile picture, to the Altered Secondary Work (also known as the Derivative Work in the Complaint).

Thus, Defendant's alterations suggest a deliberate attempt to avoid copyright infringement. If Defendant believed the Unaltered Secondary Work was transformative and entitled to fair use protection, there would have been no need to make the Altered Secondary Work.

ii) *Defendant's Secondary Works Lack The Required Nexus to the Impersonator Posts and Corresponding Commentary and/or Criticism, Negating Transformative Use*

Secondary works that "copy[] from an original for the purpose of criticism or commentary on the original or provision of information about it, tend[s] most clearly to satisfy *Campbell's* notion of the 'transformative' purpose involved in the analysis of Factor One." *Authors Guild v. Google, Inc.*, 804 F.3d 202, 213 (2d Cir. 2015).  Likewise, "[d]isplay of a copyrighted image or video may be transformative where the use serves to illustrate criticism, commentary, or a news story about that work." *Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F. Supp. 3d 339, 352 (S.D.N.Y. 2017) (footnotes omitted).

Importantly, however, transformative use requires a *nexus* between the commentary and the original work—even where the copyrighted work itself is the subject of a parody.  *See, e.g.*, *Boesen v. United Sports Publs., Ltd.*, 2020 U.S. Dist. LEXIS 203682t *4 (E.D.N.Y. Nov. 2, 2020), *reconsideration denied*, 2020 U.S. Dist. LEXIS 240935 (E.D.N.Y. Dec. 22, 2020) (holding that a news article that embedded Instagram post announcing player's retirement and incidentally included the copyrighted photograph was transformative, where "the fact that [Wozniacki] had disseminated" the Instagram post "was the very thing the Article was reporting on") (quoting *Walsh v. Townsquare Media, Inc.*, 464 F. Supp. 3d 570, 2020 WL 2837009, at *4 (S.D.N.Y. 2020)).

4

This Court addressed a similar situation—with an important distinction—in *Yang v. Mic Network, Inc.*, 405 F. Supp. 3d 537, 541-45 (S.D.N.Y. 2019). In *Yang*, the defendant's secondary work was a composite screenshot of a New York Post article. The article featured the original copyrighted photograph. *Id.* The defendant's critical commentary was on the article, and he used the secondary work to show the controversial Post article and why it was controversial. *Id.* And, the secondary work portrayed the subject of the copyrighted image in a different, negative, light. *Id.* Taken together, this Court found transformative use.

Here, by contrast, any commentary or criticism that lies in the Impersonator Posts cannot transform the Secondary Works, even as parodies, because the Secondary Works merely identify Stergiou. *See Barcroft Media*, 297 F. Supp. 3d at 352 (stating the "depiction of a controversial photograph" could be fair use as accompaniment to commentary about the controversy or criticism of the photograph) (citing *Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 25 (1st Cir. 2000)); *id.* (finding no transformative use where the second work displayed the original copyrighted images in the same manner and for the same purpose as the original copyright work); *see also id.* (defendant's use of plaintiff's images was not fair where defendant's articles did not "comment on, criticize, or report news about *the Images themselves*; instead, they used the Images as illustrative aids because they depicted the subjects described in its articles") (emphasis in original). Unlike in *Yang*, both the Unaltered and Altered Secondary Works bear no relationship to Defendant's criticism and simply are photographs of Stergiou.

### iii) Defendant's Secondary Works Embody the Same Manner and Purpose As the Original Copyright

Use of copyrighted material in the same manner and for the same purpose as the original work is not transformative. *See Wood v. Oberserver Holdings, LLC*, 2021 U.S. Dist. LEXIS

5

127484, at *6-9 (S.D.N.Y. July 8, 2021) (finding no transformation where the photographs were used as illustrative aids "for precisely the same reason they were created").

Here, Defendant John Doe's unauthorized works are used in the same manner and for the same purpose as the original Copyright.  Plaintiff Sellas' Copyright was originally created and displayed to identify Plaintiff Stergiou on Sellas' corporate website and Stergiou's LinkedIn professional networking page.  Thus, the intent behind the original work was illustrative.

Defendant John Doe's two unauthorized works are used for precisely the same reasons as



the original: illustrative aids.  Defendant likely selected the Copyright image for the profile picture, in an attempt to duplicate the Plaintiff Stergiou's legitimate accounts.  A Google search for "Angelos Stergiou" shows at least 15 alternative images that Defendant could have chosen for the Impersonator Account's profile picture, but chose not to:

*See* Angelos Stergiou,

https://www.google.com/search?q=angelos+stergiou&rlz=1C1GGRV_enUS813US813&sxsrf=A LeKk0334CvnF-

EvezS1WRVrUzpppOG2vg:1628125337813&source=lnms&tbm=isch&sa=X&ved=2ahUKEwj bqqPD15jyAhXhGVkFHcQzA6sQ_AUoAXoECAEQAw&biw=1275&bih=608 (last visited

Aug. 6, 2021).

Thus, the "transformative" sub-factor weighs against fair use.

6

**b) Images Are Not Commercial In Nature, Which Slightly Favors Fair Use**

The second sub-factor evaluates the potential economic reward the secondary user may reap through unlawful exploitation.  Courts are unlikely to find fair use if the secondary user profits from the exploitation of the copyrighted work, without payment.  *See Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985) ("The crux of the profit/nonprofit distinction is . . . whether the user stands to profit from exploitation of the copyrighted material without paying the customary price").  However, if the secondary use is educational or used in the not-for-profit context, this sub-factor favors fair use.  *See, e.g.*, *Barcroft Media*, 297 F. Supp. 3d at 353 (discussing distinction between profit/nonprofit analysis, and finding secondary user's business model itself sought to avoid license fees through deliberate use of copyrighted works, which weighed against fair use).

Here, both Secondary Works are not commercial in nature.  Defendant is not seeking to directly profit from his unauthorized use.  As a result, this sub factor slightly favors fair use.

**c) Plaintiff's Copyright Infringement Reports to Yahoo! And Defendant's Sudden Shift to the Altered Secondary Work Plausibly Suggests Defendant Acted in Bad Faith**

Any evidence of bad faith or malintent by the secondary user weighs against fair use.  The doctrine of fair use itself "presupposes good faith and fair dealing.'"  *Harper & Row Publisher*s, 471 U.S. at 562–63 (quoting *Time Inc. v. Bernard Geis Associates*, 293 F. Supp. 130, 146 (S.D.N.Y. 1968)) (quoting *Schulman, Fair Use and the Revision of the Copyright Act*, 53 Iowa L. Rev. 832 (1968)).  Thus, the propriety of defendant's conduct must be evaluated, to ensure the secondary user did not knowingly exploit the copyrighted work for free.  *Id.* (stating secondary users knowing exploitation of the copyrighted work, without justification, weighs against fair use) (citing 3 Nimmer § 13.05[A], at 13–72).  *See also Yang*, 405 F. Supp. 3d at 546 (finding

defendant's intentional removal of plaintiff's copyright label suggests bad faith and mitigates fair use).

Here, there is ample evidence of Defendant's bad faith. As set forth above, Defendant Impersonator Account's profile picture from about June 8th until June 15th was the complete, unaltered reproduction of the Copyright; the Unaltered Secondary Work. Plaintiff Sellas repeatedly reported the Impersonator Account and Posts to Yahoo! Customer Care. One of Plaintiff Sellas' grievances with the Impersonator Account was Defendant's copyright infringement, and at or around June 11, 2021, Plaintiff Sellas requested that the Impersonator Account be disabled for copyright infringement. *See* Compl., Ex. D at 5-6 (June 11th email from Michael Graif (mrgraif@mintz.com) to Yahoo! Customer Care (customercare@cc.yahoo.com) at 12:03 PM regarding "RE: Yahoo Account - Request for Support") (requesting "urgently that Yahoo disable the imposter account for impersonation and for copyright infringement, both of which are violations of Yahoo's Terms of Service").

All reasonable inferences drawn in Plaintiffs favor suggest that sometime between June 11th and 15th, Yahoo! Customer Care notified Defendant of Plaintiff Sellas' allegations, at least to claims of copyright infringement. Then, around June 16th, Defendant updated the profile picture of the Impersonator Account to the Derivative Work.

The timing of Plaintiff Sellas' reports of copyright infringement to Yahoo!, coupled with Defendant's "spontaneous" decision to alter the profile picture, is indicative of bad faith. Yahoo! notified Defendant of allegations of copyright infringement. Defendant copied the specific image of Plaintiff Stergiou's headshot. Thus, Defendant knew his use was unlawful. And, once alerted of infringement, Defendant had several options to avoid continual infringement. For instance, Defendant could have removed the profile picture all together, and left no image. Or, Defendant

8

could have used a stock image.  Not only that, but Defendant could have chosen from the internet a different picture of Plaintiff Stergiou, and sought permission from those owners.  But, Defendant made the conscious choice to keep the infringing picture, with slight alterations.  This deliberate choice to knowingly flirt with—and try to evade copyright infringement—does not just suggest bad faith, it screams it.  Thus, this sub-factor weighs against fair use.

In sum, the first and third sub-factors weigh against fair use, whereas the second slightly favors it.  Taken together, the first fair use factor—the purpose and character of Defendant's use—weighs against fair use.

### THE SECOND FACTOR WEIGHS AGAINST, OR IS NEUTRAL TO FAIR USE, FOR THE WORKS ARE CREATIVE IN NATURE, BUT PUBLISHED

The second fair use factor examines the "nature of the copyrighted work."  17 U.S.C. § 107(2).  Courts consider whether the use is: (1) "express or creative, such as a work of fiction, or more factual with a greater leeway being allowed to a claim of fair use where the work is factual or informational, and (2) whether the work is published or unpublished, with the scope for fair use involving unpublished works being considerably narrower."  *Harbus v. Manhattan Inst. for Policy Research, Inc.*, 2020 U.S. Dist. LEXIS 74568, at *14-16 (S.D.N.Y. Apr. 27, 2020) (citations omitted).  This factor acknowledges that creative and fictional works are closer to the "core of intended copyright protection" compared to factual works.  *Barcroft Media*, 297 F. Supp. 3d at 353-54.  Thus, creative and fictional works are less likely to be fairly used, compared to works that are factual in nature.  *Id.*

Photographs of individuals, specifically staged professional headshots, are creative expressions.  *See Monster Commc'ns, Inc. v. Turner Broad. Sys., Inc.*, 935 F. Supp. 490, 494 (S.D.N.Y. 1996) ("Photographic images of actual people, places and events may be as creative and deserving of protection as purely fanciful creations.")

9

Here, both the Unaltered and Altered Secondary Works are creative in nature.  The Works both are staged professional headshots, and there are several elements that convey artistic choice and expression, as in other creative works.  For instance, the photographer's artistic expression is seen in the lighting choice; background texture and size; the lens size and width; Plaintiff Stergiou's body position; Stergiou's expression; and more.

In sum, both Secondary Works are published, but creative in nature.  Taken together, the second factor weighs slightly against, or is neutral to, fair use.  And, even if this factor is neutral, the Second Circuit does not assign much weight to this factor, for it is "rarely found to be determinative."  *Davis v. Gap, Inc.*, 246 F.3d 152, 175 (2d Cir. 2001).

**THE THIRD FACTOR WEIGHS AGAINST FAIR USE, FOR THE SECONDARY WORKS ARE "ESSENTIALLY THE HEART" OF THE COPYRIGHT**

The third fair use factor examines the "'quantitative and qualitative aspects of the portion of the copyrighted material taken.'"  *Barcroft Media*, 297 F. Supp. 3d at 354 (quoting *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 613 (2d Cir. 2006)).  Courts weigh "'whether the amount copied is reasonable in relation to the purported justifications for the use under the first factor.'"  *Id.* (citation omitted).  "In general, 'the more of a copyrighted work that is taken, the less likely the use is to be fair.'"  *Harbus*, 2020 U.S. Dist. LEXIS 74568, at *16-20 (citations omitted).  But, the Second Circuit does not adhere to strict limitations as to the amount copied, that can still qualify as fair use.  *Id.* (citing *HathiTrust*, 755 F.3d at 98) (quoting *Maxtone-Graham v. Burtchaell*, 803 F.2d 1253, 1263 (2d Cir. 1986)).  Ultimately, "[t]he crux of the inquiry is whether 'no more was taken than necessary.'"  *Id.* (citing *HathiTrust*, 755 F.3d at 98) (quoting *Campbell*, 510 U.S. at 589).  Thus, "significantly cropped version[s]" suggest fair use."  *Yang*, 405 F. Supp. 3d at 547 (finding the third factor favored fair use because it used "a significantly cropped version of the [p]hotograph").

10

Here, Defendant's Secondary Works took "more than necessary." *First*, Defendant John Doe did not need to use the copyrighted image at all. As discussed with the first factor, the purpose of the profile picture is to identify Plaintiff Stergiou. Defendant Impersonator Account's screen name mirrors Plaintiff Stergiou. Thus, the purported justification is arguably satisfied by the Impersonator Account's screen name alone. In fact, the extent to which Defendant Impersonator Account's profile picture actually assists in "identification" is likely de minimis. *See, e.g.*, *Dhillon v. Does 1–10*, No. 13 Civ. 1465(SI), 2014 WL 722592, at \*5 (N.D. Cal. Feb. 25, 2014) (finding that the third factor was neutral where blog posted entire copyrighted headshot of state assembly candidate because "it would not have been feasible in these circumstances for the defendant to have copied less than the entire photo").

*Second*, the Secondary Works embody "essentially the heart" of the copyright. *See Sinclair v. Am. Media, Inc.*, No. 18-CV-0823 (LAK)(SN), 2018 U.S. Dist. LEXIS 154116, at \*18-19 (S.D.N.Y. Sep. 7, 2018) ("'[T]he fact that a substantial portion of the infringing work was copied . . . is evidence of the qualitative value of the copied material, both to the originator and to the plagiarist who seeks to profit from marketing someone else's copyrighted expression.'") (quoting *Harper & Row*, 471 U.S. at 565) (emphasis in the original). Although a headshot may capture the subject from the chest-up, purpose of a headshot is to capture one's face. Here, that is precisely what Defendant copied for the Secondary Works: the "most important parts of the original." *Authors Guild*, 804 F.3d at 221.

*Third*, the size reduction of the Secondary Works is irrelevant; since both the original and Secondary Works are used in the same manner and for the same purpose, the effect on viewers is also the same, regardless of size. *See, e.g.*, *Barcroft Media*, 297 F. Supp. 3d at 355 ("Reproducing a work, in whole or in substantial part, exactly as it was intended to be used by its owner, and

11

without permission, is not 'the type of use that furthers the essential goal of copyright law and should be excused from liability for infringement.'") (quoting *Cash Money Records*, 2017 U.S. Dist. LEXIS 82240, 2017 WL 2333770, at *7); *see also Michael Grecco Prods. v. Valuewalk LLC*, 345 F. Supp. 3d 482, 507-08 (S.D.N.Y. 2018) (finding that the degraded size and quality of the image which accompanies an article is without substantial change to the purpose of the original copyrighted work, weighing against fair use).  Thus, this factor weighs against fair use.

### THE FOURTH FACTOR WEIGHS AGAINST FAIR USE BECAUSE OF POTENTIAL MARKET HARM

The final fair use factor considers the "effect of the use upon the potential market for or value of the copyrighted work."  17 U.S.C. § 107(4).  This factor seeks to protect the original copyright holder from a market substitute.  *See, e.g.*, *Nicklen*, 2021 U.S. Dist. LEXIS 142768, at *20-21 ("When a defendant 'offer[s] a market substitute for the original,' it's use is not fair.") (quoting *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 481 (2d Cir. 2004)).  Secondary works that serve the same purpose as the original are more likely to serve as satisfactory substitutes.  *See, .e.g.*, *Authors Guild*, 804 F.3d at 223.  This inquiry also requires courts consider "'whether, if the challenged use becomes widespread, it will adversely affect the potential market for' the work."  *Id.* (quoting *Bill Graham Archives*, 448 F.3d at 613).

Here, the professional photography market, specifically for corporate headshots, may be adversely affected as a result of Defendant's unauthorized works.  As a threshold matter, "'[i]t is indisputable that, . . . a copyright holder is entitled to demand a royalty for licensing others to use its copyrighted work, and that the impact on potential licensing revenues is a proper subject for consideration in assessing [this] factor.'" *Harbus*, 2020 U.S. Dist. LEXIS 74568, at *20-24 (quoting *Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 929 (2d Cir. 1994) (internal citations omitted)).  While the Second Circuit does not automatically find potential licensing revenues

impermissibly compromised with infringement, courts do examine potential market harm, if the infringement or challenged use become widespread. *See, e.g.*, *Barcroft Media*, 297 F. Supp. 3d at 355 (stating this factor is "'undoubtedly the single most important element of fair use,' because '[f]air use, when properly applied, is limited to copying by others which does not materially impair the marketability of the work which is copied.'") (quoting *Harper & Row Publishers*, 471 U.S. at 566-67) (citing S. Rep. No. 94-473 (1975) ("[A] use that supplants any part of the normal market for a copyrighted work would ordinarily be considered an infringement.").

Here, widespread infringement of professional headshots may affect the photography market. For instance, Plaintiff Sellas paid close to $2,000 for a mere two hours of a photographer's time, as well as the corresponding back-end packaging and finishing work, for Plaintiff Stergiou's headshot. *See* Ex. A (Plaintiff Sellas Life Sciences Group, Inc. Photographer Contract - Corporate Headshots)  As set forth above, all three images at issue serve the same purpose and intent: illustrative aids for identification of Plaintiff Stergiou. Thus, Defendant's infringing works may usurp the function and market for the original copyrighted image. *See Barcroft Media*, 297 F. Supp. 3d at 355 (finding the identical purpose among copyrighted and infringing works necessarily means the original work's market position is vulnerable) (citing *Cariou*, 714 F.3d at 708).

If original and secondary works serve the same purpose, technical differences between the two do not impact the secondary work's ability to serve as a satisfactory substitute. *Authors Guild*, 804 F.3d at 223. In *Barcroft Media*, the secondary works were lower resolution that the original. *Barcroft Media*, 297 F. Supp. 3d at 355. But, because the purpose of the original and secondary works was identical, plaintiff was not required to show "an independent market for the higher-resolution versions or that the general audience for paparazzi and human-interest photographs would not be equally satisfied with its versions." *Id.*

13

Here, Defendant's Secondary Works serve the same purpose as the original. Therefore, it is irrelevant if Defendant's secondary works are smaller, or depicted in lower resolution from the original. *Compare with Marano v. Metro. Museum of Art*, 472 F. Supp. 3d 76, 83-85 (S.D.N.Y. 2020) (finding separate markets for the original image and the transformative secondary work, where the secondary work was reduced in size and in combination with textual material and graphic artwork); *Bill Graham Archives*, 448 F.3d at 613 (finding fair use despite secondary work's use of the entire original image, where (i) whole images were necessary to portray historical artifacts and (ii) copied images were reduced in size, such that "the visual impact of their artistic expression [was] significantly limited"). Thus, this factor also weighs against fair use.

## CONCLUSION

As demonstrated herein, application of all four fair use factors weigh against a finding of fair use by this Court. To the extent that Defendant had a critical or parody purpose, it was of Plaintiffs and not of the Copyright—especially as to the unaltered version of the Copyright—as to which many lawful alternatives existed for Defendant, including perhaps one that the Defendant himself eventually chose *and could have chosen at the outset*. Based on the foregoing, Plaintiffs respectfully submit that they have shown cause why Defendant's use of the Copyright in this case is not fair use, and Plaintiffs accordingly renew their request for leave to serve expedited discovery to unmask and serve Defendant John Doe.

14

Dated:  August 6, 2021

Michael R. Graif

(Admitted to practice in S.D.N.Y.)
New York BBO No. 2499929
E-mail: MRGraif@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND
POPEO P.C.
666 Third Avenue
New York, NY 10017
Tel: 212-692-6287
Fax: 212-983-3115

Kara E. Grogan
(*pro hac vice* pending)
Massachusetts Bar No. 704449
E-mail: KEGrogan@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND
POPEO P.C.
One Financial Center
Boston, MA 02111
Tel: 617-348-3015
Fax: 617-542-2241

*Counsel for Plaintiffs Sellas Life Sciences*
*Group, Inc. and Dr. Angelos M. Stergiou*

15